TOWN OF CLOVERDALE,
Appellant–Defendant,

v.

Scott RENNER, John Huber, Ann
Manning, and Judy Fox,
Appellees–Plaintiffs.

No. 67A01–0804–CV–206.

Court of Appeals of Indiana.

Feb. 17, 2009.

Bryan Lee Ciyou, Ciyou & Dixon, P.C.,
Indianapolis, IN, Attorney for Appellant.

Richard W. Lorenz, Hickam and Lorenz,
P.C., Spencer, IN, Attorney for Appellees.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Town of Cloverdale
(The Town) appeals the trial court's order
of disannexation entered in favor of appel-
lees-plaintiffs Scott Renner, John Huber,
Ann Manning, and Judy Fox (collectively,
the appellees). The Town makes a num-
ber of arguments, one of which is disposi-
tive; namely, that the appellees' complaint
was untimely filed. Finding that the ap-
pellees filed their complaint years after the
statute of limitations had run and are
therefore not entitled to the requested re-
lief of disannexation, we reverse and re-
mand with instructions to enter final judg-
ment in the Town's favor.

*FACTS*

On May 8, 1989, the Town approved and
adopted a resolution providing notice that
the Town was considering annexing certain
real property north and east of the Clover-
dale business district. On October 8, 1990,
the Town approved and adopted a second
resolution identifying the four tracts of
real estate that were to be annexed.
Those four tracts are at the center of this
litigation. On March 21, 1991, the Town
approved and adopted a third resolution
annexing those parcels of land.

On March 9, 2006, the appellees—who
were the owners of the annexed real es-
tate—filed a complaint against the Town
for disannexation, injunction, and damages.
The appellees argued that the Town had
misled them regarding the provision of
certain planned services. A bench trial
took place on March 12, 2008. On April 1,
2008, the trial court entered an order in
favor of the appellees and issued sua
sponte findings that provide in pertinent
part as follows:

*Findings*

1. The Town [ ] passed two ordinances
in 1989 and 1990 regarding annexing
the real property owned by the
Plaintiffs.

2. Apparently, none of the effected
[sic] landowners even knew of the
annexation until 1999, when land-
owner/Plaintiff, John Huber began
to investigate the matter after close
examination of his tax statements.

3. No evidence was presented by the
[T]own or the Plaintiff's [sic] that
the [T]own followed the proper stat-
utory procedure to annex this prop-
erty, which in itself would void the
annexation ordinance, if not followed
correctly, such as notice to effected
[sic] people.

4. The landowners tried over the years
to get the [T]own to follow through

on their annexation ordinance and were told at various town meetings that the [T]own would assist the land owners.

5. The [T]own has not provided police protection, fire protection, sanitary sewers, [or] water for human consumption, within the time period.

6. Current board members want to "do right" for the Plaintiffs but the [T]own simply does not have the financial resources available to offer these services at this time.

7. The Plaintiffs have paid various fees and taxes for services and [T]own taxes for these services.

8. The treasurer or Putnam County, nor the Clerk of Cloverdale can produce how much real estate taxes were paid to the County and how much paid to the [T]own. However, a witness for the Plaintiffs extrapolated damage calculations using current bills.

### Conclusions

Pursuant to I.C. 36–4–3–16, the following damages are awarded:

1. John and Joan Huber.... [A] total figure of $5,121.73 judgment.

2. Scott Renner.... [A] total of $3,544.73 judgment.

3. Jody and Sharon Fox.... [A] total of $3,612.00 judgment.

4. Evelyn Manning.... [A] total of $5,007.33 judgment.

5. Pursuant to the complaint, this Court dis-annexes the below described property collectively known as the "Huber, Renner, Fox, Manning properties"....

* * *

6. ... [T]he Court awards attorney fees in the amount of $7,764.63 to the Plaintiffs from the Defendant....

Appellant's App. p. 11–15. The Town now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

As noted above, the trial court herein entered sua sponte special findings. We apply the following standard of review to such an order:

"Sua sponte findings control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings. A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. When a court has made special findings of fact, an appellate court reviews sufficiency of the evidence using a two-step process. First, it must determine whether the evidence supports the trial court's findings of fact; second, it must determine whether those findings of fact support the trial court's conclusions of law. Findings will only be set aside if they are clearly erroneous. Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made."

*Gibbs v. Kashak,* 883 N.E.2d 825, 827–28 (Ind.Ct.App.2008) (quoting *Estate of Skalka v. Skalka,* 751 N.E.2d 769, 771 (Ind.Ct. App.2001)).

## II. Statute of Limitations

■ The Town first argues that the trial court erred by finding for the appellees because they filed their complaint well after the statute of limitations had run. The relevant statute provides as follows:

(a) *Within one (1) year after the expiration of:*

(1) the one (1) year period for implementation of planned services of a noncapital nature under section 13(d)(4) of this chapter; or

(2) the three (3) year period for the implementation of planned services of a capital improvement nature under section 13(d)(5) of this chapter;

Any person who pays taxes on property located within the annexed territory may file a complaint alleging injury resulting from the failure of the municipality to implement the plan....

Ind.Code § 36–4–3–16(a) (emphasis added).

In this case, the Town annexed the real property at issue on March 21, 1991. Thus, the longer three-year period for the implementation of planned services of a capital improvement nature expired on March 21, 1994. The appellees, therefore, should have filed their complaint within one year—by March 21, 1995.

The Town, however, concedes that the statute of limitations may have been tolled for a period of time until the appellees discovered the fact that their property had been annexed:

... the Indiana Code requires certain written notice to be sent to each owner of real property to be annexed. Ind. Code § 36–4–3–2.2. Clearly, if that, or other required notice had not been sent, then, ignoring constructive notice [the appellees] had through public records and actual notice by tax bills, [the Town] agrees that the [appellees'] claim may have been tolled until discovery, as [the appellees] allege should have been the case.

Appellant's Br. p. 12. As the Town observes, the appellees bore the burden of offering evidence that the Town failed to follow proper procedures in the annexation proceeding. No such evidence was provided. We will assume solely for argument's sake, however, that the appellees did not receive the requisite notice of the annexation. Given that assumption, the appellees' testimony establishes that, *at the latest,* they all had actual notice of the annexation in 1999. Tr. p. 33, 52, 65. They delayed legal action for six years, however, finally filing their complaint on March 9, 2006—fifteen years after the annexation took place.

According to the appellees, the doctrine of continuing wrong should provide an equitable tolling of the statute of limitations. As explained by a panel of this court,

The doctrine of continuing wrong applies where an entire course of conduct combines to produce an injury. When this doctrine attaches, the statutory limitations period begins to run at the end of the continuing wrongful act. In order to apply the doctrine, the plaintiff must demonstrate that the alleged injury-producing conduct was of a continuous nature.

*Johnson v. Blackwell,* 885 N.E.2d 25, 31 (Ind.Ct.App.2008) (internal citations omitted).

Essentially, the appellees contend that the Town has failed to provide certain services mentioned in the annexation financial plan, including water and sewer services, sidewalks, street lights, fire hydrants, and fire and police protection. They further insist that the Town has repeatedly promised that plans were in place to make these services available and progress was being made in that regard, lulling

the appellees into complacency and dissuading them from filing a complaint before the statute of limitations had run.

■ Unfortunately for the appellees, however, "the doctrine of continuing wrong does not prevent the statute of limitations from beginning to run when the plaintiff learns of facts that should lead to the discovery of his cause of action, even if his relationship with the tortfeasor continues beyond that point." *Id.* Here, at the latest, the appellees were aware of the annexation in 1999. They also must have been aware of the absence of services. As aptly put by the Town in a pleading filed with the trial court:

4. Sewer service, sidewalks, lighting and fire hydrants are involved physical objects that either exist or do not exist. As such it is not possible to conceal their non-existence.

5. Fire and Police Protection involve physical assets that are used in providing a service. That service either is or is not provided. The provision of that service is done in the open and publicly. Its existence or non-existence cannot be concealed.

Appellant's App. p. 44. At the latest, therefore, the appellees had to have known all of the necessary facts in 1999; namely, that their property had been annexed and that the promised services were allegedly not being provided. Thus, the one-year statute of limitations began running at that time and expired—at the very latest, giving every benefit of the doubt to the appellees—on December 31, 2000. The only way to protect their right to seek disannexation would have been filing the complaint within that timeframe, notwithstanding the Town's alleged promises of plans and progress. The failure to do so has rendered their remedy time-barred.

■ The appellees also rely briefly on the doctrine of estoppel, arguing that the Town should be estopped from raising a statute of limitations defense by its alleged promises made at Board meetings throughout the years. Initially, we observe that equitable estoppel is generally not applicable against governmental entities for the actions of public officials. *U.S. Outdoor Advertising Co., Inc. v. Ind. Dep't of Transp.*, 714 N.E.2d 1244, 1259–60 (Ind. Ct.App.1999). This is our policy because " 'the government could be precluded from functioning if it were bound by its employees' unauthorized representations.' " *Id.* (quoting *Nat'l Salvage & Serv. Corp. v. Comm'r of Ind. Dep't of Envtl. Mgmt.*, 571 N.E.2d 548, 556 (Ind.Ct.App.1991)).

Furthermore, "our courts have been 'hesitant to allow an estoppel in those cases where the party claiming to have been ignorant of the facts had access to the correct information.' " *Id.* at 1260 (quoting *Cablevision of Chicago v. Colby Cable Corp.*, 417 N.E.2d 348, 355 (Ind.Ct. App.1981)). As the Town pointed out in a pleading filed with the trial court, "[a] municipality is subject to open records and open door law. Everything that a municipal body does or does not do is on the public record. One cannot claim reasonable reliance necessary for estoppel for matters that are matters of public record." Appellant's App. p. 44. We agree, and conclude that, inasmuch as the appellees had access to all relevant information, they cannot make a successful estoppel argument herein.

Inasmuch as the one-year statute of limitations had long since elapsed when the appellees filed their complaint,[1] the trial

---

1. The appellees direct our attention to a passage in *Salmon v. City of Bloomington* in which a panel of this court noted that a plaintiff seeking disannexation carries a heavy burden "once an annexation has become final after the time period for remonstrating has

court erroneously entered judgment in their favor. Given that the legislature has decided that the appellees' claims are time-barred, we need not and will not consider the substance of their arguments.[2]

The judgment of the trial court is reversed and remanded with instructions to enter final judgment in the Town's favor.

NAJAM, J., and KIRSCH, J., concur.

passed, or a remonstrance has been rejected." 761 N.E.2d 440, 448 (Ind.Ct.App.2002). Under those circumstances, "[s]uch relief is not impossible to obtain, but there must be a showing of egregious action (or a lack of action) on the part of the annexing municipality...." *Id.* The appellees seek to extrapolate this standard to their own situation, contending that the Town's behavior herein was sufficiently egregious to warrant relief. The *Salmon* standard, however, applies to plaintiffs who filed their complaint within the statute of limitations. According to *Salmon,* if a timely complaint was filed after annexation has become final and the period for remonstrating has passed, the plaintiffs bear a heavy burden. Thus, it is a heavy burden, indeed,

borne by a plaintiff who files an *untimely* complaint—a burden that is impossible to bear. *Salmon* does not apply to such a plaintiff and the statute of limitations is an insurmountable bar.

2. This resolution does not preclude the Town from responding to the appellees' seemingly justifiable concerns by actually providing the promised services and providing equitable adjustments for services that have been paid for but not received. We also note that the appellees clearly have the power of the ballot box in their hands—this means of redress may be the most powerful weapon in their arsenal.